(No. 6234.   November 5, 1935.)

GEORGE P. CLARIS, Respondent, v. OREGON SHORT
LINE RAILROAD COMPANY, a Corporation, Appel-
lant.

[51 Pac. (2d) 217.]

Geo. H. Smith and H. B. Thompson, for Appellant.

J. H. Andersen, Walter H. Anderson and Gus Carr Anderson, for Respondent.

HOLDEN, J.—Prior to and on March 6, 1932, George P. Claris was employed in the shops of the Oregon Short Line Railroad Company at Pocatello, Idaho, as a machinist. While operating a grease gun greasing an engine bushing, he was injured, the injury resulting in the loss of his left eye. Thereafter he brought this action against the railroad company to recover, upon charges of negligence, for the loss of his eye. Upon a trial of the cause, the lower court granted a motion by defendant railroad company for a directed verdict and, from the judgment entered thereon, Claris appealed. Upon that appeal this court reversed the judgment of the trial court and ordered a new trial. (*Claris v. Oregon Short Line R. R. Co.*, 54 Ida. 568, 33 Pac. (2d) 348.) On the second trial of the case, Claris recovered a judgment for $7,000, from which the railroad company prosecutes an appeal.

The action is based upon the Federal Employers' Liability Act (35 Stat. 65). Respondent, while engaged in greasing a side rod bushing of an engine used in interstate commerce, turned a lever to actuate the operation of a grease gun (built and maintained by appellant and used in its shops), whereupon grease, water, metal shavings and borings were discharged from the grease gun into the face and eyes of the respondent with such force that particles of metal, grease, etc., became imbedded in, and under, the surface of his left eye.

While appellant assigns four errors, it contends that "It being an established fact that water was inserted into the grease gun as a prank or practical joke, the defendant is not liable, and the judgment must be set aside," and that "The presentation of this point will, in our opinion, cover all of the assignments of error, and is so intended."

Both Porter Graves and W. D. Furbush, the former foreman of, and the latter a machinist in, the shop where respondent was working at the time he was injured, testified that water was placed in the grease gun, and also that water was

placed in the grease gun for the purpose of playing a practical joke on the respondent. However, there is substantial evidence in the record that Graves, who had charge of the particular shop and grease gun in question here, supplied the respondent with the grease gun as well as the engine bushing he was greasing at the time of the injury, and that Graves, after having so supplied the engine bushing, informed respondent that the grease gun was ready and directed him to go ahead and use it. It is not contended that respondent knew water had been placed in the grease gun, nor that he was given any warning of the impending danger.

The question which appellant contends is decisive, and which it also contends must be decided favorably to it, and thus defeat a recovery by respondent, in turn, and at once, presents other questions, which, if decided favorably to respondent, would result in an affirmance of the judgment. First: Was appellant under the personal duty to furnish respondent with a safe tool with which to grease the engine bushing? Second: In supplying respondent with the engine bushing, and in informing him that the grease gun was ready, and thereby giving respondent to understand that it was in a safe condition for use, and in directing the respondent to go ahead and use the grease gun, was Graves in the discharge of a personal duty which his master, the appellant, owed the respondent? Third: Assuming, but not conceding, that water was placed in the grease gun, and also that water was placed in the grease gun by Furbush at the direction of Graves, for the purpose of playing a practical joke on the respondent, as testified to on the second trial of the case by both Graves and Furbush, the question then arises, if, during the existence of the relation of principal and agent, the agent receives notice in his private capacity of facts not then concerning his principal, but afterwards acts for his principal in a matter in which such fact is material, should the notice so received by the agent be imputed to his principal? Fourth: Was appellant under the duty to warn the respondent that water had been placed in the grease gun? And Fifth: Is the appellant liable for having given false information to respondent

that the grease gun was ready, to wit, in a safe condition for use, and in then directing him to go ahead and use it? These questions will be discussed in the order above stated.

As to the first question, there can be no doubt, because it was held upon the former appeal of this case that it was the duty of the master not only to furnish its employees with safe tools, but also to keep them safe. (*Claris v. Oregon Short Line R. R. Co., supra.*)

We turn now to the second question. This court held in *Larsen v. Le Doux,* 11 Ida. 49, 81 Pac. 600 (approved and adhered to in *Coulston v. Dover Lumber Co.,* 28 Ida. 390, 154 Pac. 636, and in *Wilson v. St. Joe Boom Co.,* 34 Ida. 253, 200 Pac. 884), that "If the act or omission that caused the injury was one pertaining to the duty the master owed to his servant, he is responsible for the manner of its performance without regard to the rank of the servant or employee to whom it is intrusted," and that "The true test in all cases by which it may be determined whether the negligent act causing the injury is chargeable to the master or is the act of a coservant is, Was the offending employee in the performance of the master's duty in reference to the particular act causing the injury, an act done in the performance of a duty that the master owed his servant? If so, his negligence is that of the master and liability follows." Applying the test so adopted by this court, it is clear that in supplying the respondent with the grease gun in question, and in informing respondent that the grease gun was ready and thereafter directing respondent to go ahead and use it, Graves was performing a duty which his master, the appellant, owed the respondent, and that Graves was guilty of an act of omission, imputable to appellant, in the performance of that duty by failing to supply the respondent with a safe tool with which to grease the bushing.

We believe that a complete and satisfactory answer to the third question is found in *Henry v. Omaha Packing Co.,* 81 Neb. 237, 115 N. W. 777, where it is held that if an agent receives notice in his private capacity, during the existence of the relation of principal and agent, of facts not then

concerning his principal, but afterwards acts for the principal in a matter in which such fact is material, the notice so received by the agent should be imputed to the principal. (See, also, Restatement of the Law of Agency, vol. 1, sec. 276; *Harrington v. United States*, 11 Wall. (U. S.) 356, 20 L. ed. 167.)

Next for consideration comes the question as to whether appellant was under any duty to warn the respondent of the dangerous condition of the grease gun. We repeat that it was held in *Larsen v. Le Doux, supra,* that the character of the act in the performance of which the injury arises, and not the rank or grade of the employee, determines the relationship of one employee to another, and that, if the act is one pertaining to a personal duty the master owes to his servant, he is responsible for the manner of its performance, without regard to the rank or grade of the employee to whom it is entrusted. The application of that rule to the said acts of Graves in performing a personal duty his master owed to the respondent, makes Graves a vice-principal as to the performance of that duty. In other words, as to the performance of that personal duty, Graves stood in the place of his master, and so far as the respondent was concerned, Graves was his master. Graves knew the danger the respondent would be exposed to when he ordered him to use the grease gun; on the other hand, the respondent was wholly ignorant of the danger. The duty of appellant to warn respondent of the impending danger is clear. (3 Labatt on Master and Servant, secs. 1016, 1112; *Hume v. Ft. Halifax Power Co.*, 106 Me. 78, 75 Atl. 300, 138 Am. St. 332; *Rogers v. Portland Lumber Co.*, 54 Or. 387, 102 Pac. 601, 103 Pac. 514; see, also, 4 Labatt, M. & S., sec. 1510A, and 39 C. J., sec. 602; 1 Mechem on Agency, 2d ed., secs. 1624, 1625.)

Finally, comes the question as to whether the appellant is liable for having given false information to the respondent. It is not disputed that Graves informed the respondent that the grease gun was ready and in effect that it was in a safe condition to be used. That information was false, and respondent's master knew it was false. The re-

spondent relied and acted upon the truth of such information, and was seriously injured. Therefore, appellant is liable for the injury the respondent suffered as a result of acting upon such false information. (*Allen v. Bell*, 32 Mont. 69, 79 Pac. 582. See, also, *Porter v. Mapleton Electric Light Co.*, 191 Iowa, 1031, 183 N. W. 803.)

It follows that the judgment must be affirmed, and it is so ordered.

Costs awarded to respondent.

Givens, C. J., and Morgan and Ailshie, JJ., concur.

Budge, J., not participating.