465 P.2d 652

Orban DAVIS, Individually and as Guardian
Ad Litem for his Minor Son, Robert O.
Davis, Plaintiff-Respondent,

v.

Robert A. BUSHNELL and McNeel Lumber
Company, an Idaho corporation,
Defendants-Appellants.

No. 10402.

Supreme Court of Idaho.

Feb. 27, 1970.

Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-appellants. fendants-appellant.

Bruce O. Robinson, Kenneth F. White, Nampa, for plaintiff-respondent.

SHEPARD, Justice.

This is an action to recover for personal injuries suffered by the minor child of the plaintiff who, while riding a bicycle, was struck by a truck driven by the defendant, Robert A. Bushnell, doing business as the McNeel Lumber Company. A jury verdict was returned in favor of the plaintiff, judgment was entered thereon, and defendants appeal. We affirm.

At approximately 3:00 p. m. on Saturday, April 16, 1966, Robert O. Davis, an eight year and ten month old child, was riding his bicycle across South Montana Street in Caldwell, Idaho, when he was struck by a southbound pickup truck driven by Robert A. Bushnell. There was a large truck and trailer combination parked on the west side of South Montana Street at least partially off the traveled portion of the roadway. The area in question is partially residential. However, the area west of the accident scene consists of school grounds.

Aside from the minor child and the defendant driver, there were no witnesses to the accident and the circumstances thereof are unclear and controverted in the record. Defendant Bushnell stated in essence that the accident was unavoidable because the boy rode his bicycle into the street from immediately behind the parked truck and despite Bushnell's minimal speed there was nothing he could do to avoid the collision. The confused and self-contradictory statements by the boy, as indicated in his deposition, could be deemed to substantiate Bushnell's testimony. However, the plaintiff's evidence consisting of photographs, skidmarks, location of the bicycle following the impact, magnitude of the impact, and the physicist's testimony, could all be taken to establish a point of impact some distance down the street from the parked truck thereby controverting Bushnell's testimony of the point of entry into the street and the point of impact.

There was substantial dispute as to the speed of the defendants' pickup truck immediately prior to the accident. Plaintiff introduced testimony of a policeman and a physics professor to indicate that based on the length of the skidmarks left by the pickup truck Bushnell was driving six to eight miles per hour above the posted speed limit of 30 miles per hour. Defendants, on the other hand, produced the testimony of a traffic accident investigator who indicated that based on his calculations Bushnell's speed was clearly within the posted limit.

There is substantial dispute as to the injuries suffered by the Davis youth. Ten or eleven months after the accident the Davis boy began to experience epileptic seizures which range in intensity up to full convulsions. Drugs must be administered to control the seizures. Physicians testified for both plaintiff and defendants, and it is enough to say that plaintiff's medical witnesses were of the opinion that the epileptic seizures were caused by the accident while defendants' medical testimony indicated no causal connection between the accident and the seizures.

At the conclusion of trial a jury returned a unanimous verdict of $55,000.00 in favor of the plaintiff. Defendants moved for an involuntary dismissal of the action at the close of plaintiff's case, moved for a directed verdict in favor of the defendants at the close of all the evidence, and following the jury verdict moved for a judgment notwithstanding the verdict or in the alternative for a new trial. All motions were denied.

Appellants assign error in the trial court's denial of their motion for involuntary dismissal at the close of plaintiff's case. It is axiomatic that the evidence be viewed at that point in the light most favorable to the plaintiff. Kelley v. Bruch, 91 Idaho 50, 415 P.2d 693 (1966). In so viewing the evidence the trial court was

correct in ruling that the jury could have reasonably believed that on a clear day, on a straight city street, the Davis boy was struck by Bushnell's pickup truck while he was attempting to cross the street after having looked four times to determine the safety of his actions. The jury could have believed the plaintiff's evidence as to the boy's point of entry into the street and the point of impact, and also that Bushnell was driving above the posted speed limit. The jury could have believed that Bushnell's actions were negligent and were the proximate cause of the accident.

Appellants also assign error in the trial court's denial of his motion for a directed verdict at the close of all the evidence. For that purpose we are also required to view the evidence most favorably to the plaintiff. The jury could have believed the plaintiff's evidence regarding the above mentioned facts and that the cause of the Davis boy's epilepsy was connected to the accident. Since reasonable minds could have differed on these matters, the trial court was correct in submitting the case to the jury. Kelley v. Bruch, supra; and Lundy v. Hazen, 90 Idaho 323, 411 P.2d 768 (1966).

Appellants contend that the Davis boy was negligent as a matter of law in violating I.C. § 49-730. That statute provides:

"The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on said highway."

Appellants further point to I.C. §§ 49-739 and 49-740, which make applicable to those riding bicycles upon roadways all of the statutory rights and duties applicable to drivers of other vehicles.

■ Appellants argue that the trial court should have instructed the jury that the Davis boy could under the defense theory of the case have been guilty of violation of the statute, hence negligent as a matter of law and barred from recovery. That theory was set forth in defendants'

requested instruction No. 23, which was refused by the trial court. The court's instruction No. 9 defined the standard of care applicable to a child of tender years, and the court's instruction No. 22 advised the jury that while the violation of a statute by an adult constituted negligence as a matter of law, a like violation by a child of tender years did not constitute such negligence as a matter of law. The trial court committed no error in the giving and refusing of the said instructions in light of our recent decision in Crane v. Banner, 93 Idaho 69, 455 P.2d 313 (1969).

In *Crane* an eight year old child was struck and killed by an automobile as she ran across a highway. Defendant argued that the child was contributorily negligent as a matter of law in running in front of him. In that decision we overruled Laidlaw v. Barker, 78 Idaho 67, 297 P.2d 287 (1956), and held that a minor child of tender years could not be said to be contributorily negligent as a matter of law, but that such constituted a question for the jury. We said therein:

"A child is held to that standard of care which would be expected from an ordinary child of the same age, experience, knowledge, and discretion. Kelley v. Bruch, supra; Mundy v. Johnson, supra [84 Idaho 438, 373 P.2d 755 (1962)]. Because these factors vary so greatly among children and because children are naturally unpredictable and impulsive, it is especially difficult to judge their conduct as a matter of law. Instead, it is preferable to submit the issue of their conduct to a jury. This approach was best defined in Mundy v. Johnson, supra, in which this court stated

" 'Determination of the capacity of children for care and caution does not call for scientific or technical analysis. It is a practical question within the everyday experience of the men and women who compose our juries. They are familiar with the impulsive tendencies, characteristics and predilictions of children. They are fully capable of

resolving such issues, and the determination thereof may safely be committed to them.' "

In *Crane* the defense had contended that the eight year old child was contributorily negligent as a matter of law. That negligence did not stem from the violation of a statute. Herein it is contended that the eight year old child was guilty of violation of a statute, hence negligent per se, and contributorily negligent as a matter of law. The same problems in setting a standard of care for children of tender years as was discussed in the *Crane* case are also apparent in the case at bar. The same theory and the same language is applicable to both situations.

The court at trial instructed as follows:

"If a driver of a motor vehicle knows of the presence of a child or children in, near, or adjacent to the street or highway, or should know that children may reasonably be expected to be in the vicinity, the driver is under a duty to exercise reasonable, ordinary, due or proper care for the safety of the child or children, and to take into consideration in exercising such care the thoughtlessness of children in moving at unexpected moments across thoroughfares used for vehicular traffic, and to exercise the degree of care commensurate with the ordinary emergencies reasonably to be expected.

"In other words, if a driver knows or should reasonably anticipate the presence of children in or adjacent to a road, he is under a higher duty or degree of care than if the presence of children should not reasonably be anticipated. It is for you to determine, from all the facts and circumstances in this case, whether defendant should reasonably have anticipated the presence of Robert O. Davis, and whether the defendant driver used the degree of care commensurate with the hazards reasonably to be anticipated. Failure to use the proper degree of care would constitute negligence on the part of defendant driver; on the other hand, if he did use the proper degree of care, defendant would not be negligent.

"A driver is not under such duty of care as to make him a guarantor against an accident happening. To impose such a duty would make it impossible for anyone to drive an automobile."

■ Appellants urge that such instruction was incorrect because it placed "a higher or different standard of care" than is required under our statute, I.C. § 49–735, which provides:

*"Drivers to exercise due care.*—Notwithstanding the foregoing provisions of this article, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."

We do not agree that the court's instruction set out above requires a higher degree or standard of care than ordinary care. There is no inconsistency between I.C. § 49–735 and the instruction of the court. Both require a standard of due care dependent upon the particular facts then existing. Ordinary and due care may mean different conduct under different circumstances. A driver must, for example, exercise due care when driving in a blinding snowstorm with an extremely slippery highway and also exercise due care when driving in sunny weather on clear and dry pavement. However, it cannot be said that conduct which constitutes due care under the one situation would also be due care under the other. That standard is no different when applied to the case at bar. The instruction as given by the court was a clear and correct statement of the law and did not constitute error.

■ Appellants contend that the instructions of the trial court regarding contributory negligence and its effect as a bar to plaintiff's recovery were not clearly given and that the court should have instructed on this issue in the form requested by

appellants (defendants). We note first that a party is not entitled to have instructions given in the form submitted, but only to have them given in a form which fully and correctly states the issues and the law. Jones v. Talbot, 87 Idaho 498, 394 P.2d 316 (1964). The court's instructions must be viewed as a whole to determine if the issues were correctly stated and we assume that they were given due consideration by the jury in their entirety. Hayslip v. George, 92 Idaho 349, 442 P.2d 759 (1968). Viewing the instructions in their entirety, we conclude that the issue and the effect of possible contributory negligence were made clear to the jury and that there is no merit in appellants' assignment of error.

Appellants also complain of instructing the jury in verbatim language from plaintiff's amended complaint. We recognize and reiterate the undesirability of instructing juries by using the allegations of the parties. We, nevertheless, do not consider it as prejudicial error. Shepard v. Smith, 74 Idaho 459, 263 P.2d 985 (1953); Pearson v. City of Weiser, 69 Idaho 253, 206 P.2d 264 (1949). The trial judge used language from both the plaintiff's complaint and defendants' answer, and it is difficult to see how either party may have been prejudiced. The trial judge also stated that the language used from the pleadings was in fact only the allegations of the parties and not any statement by the court. We do not find that when the instructions are viewed as a whole, that any prejudice resulted meriting the designation of reversible error.

Appellants' final contention is that the jury verdict was so contrary to the manifest weight of the evidence that the refusal to grant them a new trial constituted reversible error. It is well settled that this Court will not set aside the denial of a new trial by a trial judge absent a clear showing of abuse of discretion. Archer v. Shields Lumber Co., 91 Idaho 861, 434 P.2d 79 (1967); Blaine v. Byers, 91 Idaho 665, 429 P.2d 397 (1967). We reiterate that the record before us discloses a number of issues of material fact upon which reasonable minds might have differed and, therefore, hold that the trial judge was correct in denying the motion for new trial.

The judgment of the trial court is affirmed. Costs to respondent.

McFADDEN, C. J., and McQUADE, DONALDSON and SPEAR, JJ., concur.